IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JUDGE SWAIN

RALPH VANACORE,

   Plaintiff,

vs.

JOHN MATTINGLY, Individually,
and as Commissioner of the
New York City Administration for
Children's Services,
WILLIAM BELL, Individually,
and as Commissioner of the
New York City Administration
for Children's Services
NICHOLAS SCOPETTA,
Individually, and as Commissioner of the
New York City Administration for
Children's Services and
THE CITY OF NEW YORK.

   Defendants.

07 CV Civil Action No.: 3579

**COMPLAINT**
**(JURY TRIAL DEMANDED)**



RECEIVED
MAY 04 2007
U.S.D.C. S.D.N.Y.
CASHIERS

  Plaintiff, appearing by his attorney, The Law Office of Scott B. Schwartz, PLLC, hereby alleges as follows:

### PRELIMINARY STATEMENT

  1. This is a civil rights action in which plaintiff Ralph Vanacore seeks damages to redress the deprivation, under color of state law, of rights guaranteed to him under the First and Fourteenth Amendments of the United States Constitution.

  2. This action arises from defendants' continuous and targeted effort to discriminate and retaliate against the plaintiff, a Caseworker for defendant New York City Administration for Children's Service (ACS). From April 1999 until the present, the defendants conspired among themselves to humiliate the plaintiff, to discredit him by bringing dubious charges against him,

to suspend him, and ultimately, to terminate him, all of which was motivated by plaintiff's willingness to speak out against and protect the public from ACS' newly-enacted Title Series program. In doing so, the defendants deprived plaintiff of rights guaranteed to every citizen of the United States in violation of 42 U.S.C. §1983 and 42 U.S.C. §1985, and the First and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

3. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1343, which provides for original jurisdiction over all actions brought pursuant to 42 U.S.C. § 1983, and by 28 U.S.C. § 1331, which provides jurisdiction over all cases brought pursuant to the Constitution and laws of the United States.

4. Venue is proper because all or substantially all of the events giving rise to the present action occurred within the Southern District of New York. See, 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff Ralph Vanacore is a resident of the State of Connecticut.

6. From 1989 to the present, Plaintiff has been employed as a Caseworker by ACS.

7. Defendant John Mattingly is the Commissioner of ACS, an agency authorized by the State of New York to investigate reports of child abuse and neglect, and to care for children in foster care.

8. As Commissioner of ACS, defendant Mattingly has final discretionary authority in making and/or approving policies for ACS, including training, supervision and discipline of ACS employees, including suspensions and terminations of such employees.

9. As Commissioner of ACS, defendant Mattingly is responsible, individually, and in his official capacity, to assure that ACS complies with the United States Constitution, statutes, regulations, and the common law of the United States of America and the State of New York.

10. Upon information and belief, defendant William Bell was appointed Commissioner of ACS by the City of New York in December 2001, and remained as Commissioner until July 2004.

11. As Commissioner of ACS, Defendant Bell had final discretionary authority in making and/or approving policies for ACS, including training, supervision and discipline of ACS employees, including suspensions and terminations of such employees.

12. As Commissioner of ACS, defendant Bell was responsible, individually, and in his official capacity, to assure that ACS complied with the United States Constitution, statutes, regulations, and the common law of the United States of America and the State of New York.

13. Upon information and belief, defendant Nicholas Scopetta was appointed as Commissioner of ACS in 1996 and remained in that position until December 2001.

14. As Commissioner of ACS, defendant Scopetta had final discretionary authority in making and/or approving policies for ACS, including training, supervision and discipline of ACS employees, including suspensions and terminations of such employees.

15. As Commissioner of ACS, defendant Scopetta was responsible, individually, and in his official capacity, to assure that ACS complied with the United States Constitution, statutes, regulations, and the common law of the United States of America and the State of New York.

16. Defendant City of New York (hereinafter "City") is a municipal corporation, incorporated pursuant to the laws of the State of New York.

17. Defendant City formed ACS as a City of New York agency in January 1996.

## FACTS

A. Introduction

18. Plaintiff has been employed as a Caseworker by ACS since January 1989.

19. Prior to April 1999, ACS created the "Title Series," which divided its employees into four categories: 1) Child Protective Specialist (CPS); 2) Child Welfare Specialist (CWS); 3) CPS Supervisor; and 4) CWS Supervisor.

20. The asserted purpose of the Title Series positions was to reward ACS employees who adhered to higher standards of professionalism. The CPS Division would be in charge of investigating child neglect, while the CWS Division was responsible for implementing family service plans.

21. The placement of ACS employees into the Title Series positions was supposed to be merit-based and competitive, but the selection process was random, arbitrary and allowed incompetent ACS employees to be responsible for the safety and welfare of children throughout the City of New York.

22. Plaintiff, a then-10 year veteran employee of ACS, was a fierce and outspoken critic of the Title Series program, which involved neither a competitive examination nor any meaningful review of a Caseworker's qualifications to guard the safety and welfare of children.

23. Before the selection process began, plaintiff voiced his concerns to a number of supervisory officials at ACS, including his warnings that incompetent people would be chosen for the positions and, in turn, otherwise vulnerable children would be subjected to greater harm.

24. Nonetheless, the ACS Commissioner at the time, defendant Nicholas Scopetta, moved forward with the Title Series selection without any competitive examinations or any investigation of the skills of employees who would be entrusted to care for children and families.

B. <u>The Retaliation by ACS</u>

25. On April 15, 1999, plaintiff received a notice that he had not been promoted into ACS' Title Series, despite his years of experience and well-known qualifications. The notice did not contain the reason why he was denied a position.

26. It is not a coincidence that, on the same date, a notice was hand-delivered to plaintiff indicating that he was being suspended "indefinitely" by ACS <u>without pay</u>. The notice did not provide the reason or the basis why he was being suspended.

27. At that time, the plaintiff had no track record of terminations, suspensions or any formal discipline during his 10-year tenure at ACS (formerly known as the Bureau of Child Welfare). In fact, he had consistently received praise from his peers and supervisors at ACS. But, unlike other ACS employees, plaintiff never received a formal evaluation in 1999.

C. <u>The May 1999 Charges</u>

28. More than one month after he was fired, plaintiff received a set of Charges and Specifications dated May 18, 1999 (the "May 1999 Charges"). Without any basis in fact, ACS accused the plaintiff of threatening and intimidating a supervisor by following a supervisor to an off-site location.

29. On August 5, 1999, an ACS Hearing Officer, without any evidence that plaintiff committed the alleged acts, and without any record of prior misconduct by the plaintiff during his years with ACS, declared that plaintiff should be suspended for a period of seven days. Plaintiff appealed this Step I determination.

30. On October 20, 1999, a Step II conference was held to review the ACS Hearing Officer's recommendation that the plaintiff should be suspended for seven days.

31. On November 9, 1999, an ACS Hearing Officer correctly found that ACS failed to follow a policy of progressive discipline. But he still saw fit to recommend four-day suspension. Plaintiff appealed this Step II determination.

32. From April 1999 until December 1999, ACS wasted taxpayer money and resources as plaintiff stayed away from the office, as requested by ACS, and collected his full salary, except for a reduction of four days pay.

33. A Step III conference did not take place for more than 10 months. The hearing was finally held on October 17, 2000. On November 13, 2000, an ACS Hearing Officer upheld the four-day suspension that was previously recommended at the Step II hearing.

D. The February 2001 Charges

34. When the dust settled, the full penalty to plaintiff was a four-day suspension. But defendants were not done retaliating against the plaintiff as they served him with a new set of Charges and Specifications dated February 26, 2001 (the "February 2001 Charges"). The February 2001 Charges falsely claimed that, from December 1999 to February 2001, plaintiff failed to perform his required duties, failed to obey direct orders of a supervisor, used inappropriate language toward a supervisor, slept on duty and acted irresponsibly. Remarkably, plaintiff had not even reported to work during the month of December 1999.

35. On April 12, 2001, a Step I conference was held to determine the discipline that was warranted with respect to the February 2001 Charges.

36. On April 27, 2001, the ACS Hearing Officer held that the drastic penalty of termination was warranted.

37. On May 11, 2001, plaintiff appealed the Step I determination.

38. On August 14, 2001, an ACS Hearing Officer refused to accommodate plaintiff's request for an adjournment, even though the request was based on an illness. Without plaintiff in attendance, the Hearing Officer upheld the penalty of termination on October 4, 2001.

39. On October 26, 2001, plaintiff received a letter from then-ACS Commissioner, defendant Nicholas Scopetta, indicating that ACS adopted the Step II determination, resulting in his termination, effective immediately, from the agency. At the same time, plaintiff was removed from the ACS payroll.

40. On November 8, 2001, plaintiff appealed the Step II determination.

41. On November 13, 2001, an ACS Hearing Officer affirmed the Step II determination and, by extension, ACS' decision to terminate plaintiff without pay.

E. The Arbitration of the 1999 and 2001 Charges

42. On January 10, 2002, plaintiffs' union, Social Service Employees Union, Local 371 (the "Union"), challenged plaintiff's termination by filing a request for arbitration concerning the February 2001 Charges and Specifications.

43. On December 23, 2002, the Union filed a request for arbitration concerning the May 1999 Charges and Specifications which resulted in a four-day suspension.

44. On May 8, 2003, the arbitration of the February 2001 Charges began.

45. The second hearing day was adjourned for many months at defendant City of New York's request. On June 7, 2004, the Arbitrator hesitantly agreed to adjourn the arbitration on condition that plaintiff be reinstated to ACS' payroll pending the outcome of the arbitration.

46. On June 7, 2004, plaintiff and the City of New York entered into a stipulation (the "June 2004 Stipulation") by which plaintiff would be reinstated to ACS' payroll pending the outcome of the arbitration.

47. In derogation of the June 2004 Stipulation, and the clear directive of the Arbitrator, The City of New York refused to reinstate plaintiff to the ACS' payroll.

48. On June 16, 2004, the second and final day of the arbitration was held.

49. On July 20, 2004, the Arbitrator held that the drastic penalty of termination was not warranted where ACS failed to prove most of its allegations against plaintiff, failed to enact a progressive series of disciplinary measures and failed to advise plaintiff of ACS' performance and behavioral standards. Most importantly, the Arbitrator found that there was no evidence that plaintiff ever threatened or intimidated his supervisor.

50. In his decision, the Arbitrator held that plaintiff should be reinstated with back pay and benefits, except for a three-month period that would constitute a disciplinary suspension.

F.  <u>The August 2004 Charges</u>

51. Instead of adhering to the Arbitrator's decision, ACS served plaintiff with a new set of Charges and Specifications dated August 13, 2004 (the "August 2004 Charges"). The August 2004 Charges, which are remarkably similar to the April 1999 Charges, alleged that, from September 17, 2001 to October 5, 2001, plaintiff used abusive and inappropriate language toward a supervisor, physically threatened the ACS supervisor and stalked the supervisor. These stale charges, which were brought almost <u>three years</u> after plaintiff's alleged improper acts, coincided with plaintiff's return to ACS. ACS despicably blamed the 9/11/01 attacks for the 3-year delay in bringing charges against him.

52. On September 7, 2004, plaintiff was suspended again without pay for a period of thirty days, effective immediately. Remarkably, none of the acts that formed the basis of the 30-day suspension were raised during the Arbitration that resulted in plaintiff's reinstatement.

53. On September 20, 2004, an ACS Hearing Officer confirmed the August 2004 Charges and held that, for the second time, plaintiff should be terminated. Plaintiff appealed this determination.

54. On September 28, 2004, a Step II conference was held in which the ACS Hearing Officer confirmed that the drastic penalty of termination was warranted.

55. On October 6, 2004, defendant Mattingly, the ACS Commissioner, sent plaintiff a letter accepting the Step II determination and terminating plaintiff, effective immediately. Notably, he was the *second* ACS Commissioner to terminate the plaintiff.

G. The September 2004 Charges

56. ACS relentlessly issued another set of Charges and Specifications dated September 15, 2004 (the "September 2004 Charges") against plaintiff with allegations that, on July 2, 2004, while unsuccessfully attempting to obtain his paycheck in accordance with the July 2004 Stipulation, plaintiff threatened fellow ACS employees with physical violence and used inappropriate language.

57. On October 6, 2004, a Step I conference was held to determine the September 2004 Charges. On February 24, 2005, an ACS Hearing Officer, in derogation of the Arbitrator's decision, and the Order of the Supreme Court, New York County (see below), recommended that plaintiff be terminated from ACS in connection with the September 2004 Charges. Plaintiff appealed this determination.

58. On April 27, 2005, defendant Mattingly, Commissioner of ACS, sent plaintiff a letter accepting the Step II determination that plaintiff should be terminated, effective immediately. Again, this was in derogation of an Arbitrator's decision and an Order of the Supreme Court, New York County (see below).

H. <u>The Article 75 Proceeding</u>

59. On September 20, 2004, the Union brought an Article 75 proceeding in the Supreme Court, New York County to confirm the July 2004 arbitration award.

60. On February 18, 2005, the Supreme Court, New York County confirmed the July 2004 Arbitration Award.

I. <u>The Arbitration of the May 1999, August 2004 and September 2004 Charges</u>

61. On October 20, 2004, the Union filed a request for arbitration challenging the August 2004 Charges which resulted in plaintiff's termination, as memorialized by defendant Mattingly's letter dated October 6, 2004. The request for arbitration was consolidated with the earlier request for arbitration of the May 1999 Charges.

62. On May 13, 2001 and May 31, 2005, the arbitration of the May 1999 Charges, the August 2004 Charges and the September 2004 Charges took place.

63. With respect to the May 1999 Charges, the arbitrator reduced the ACS Hearing Officer's recommendation of a four-day suspension to a written reprimand.

64. With respect to the August 2004 Charges, the arbitrator reduced the penalty of termination to a five-day suspension.

65. With respect to the September 2004 Charges, the arbitrator dismissed those charges on grounds that they were not substantiated at all.

J. <u>The Improper Practice Petition</u>

66. On January 6, 2005, the Union filed an improper practice petition with the Office of Collective Bargaining for refusing to reinstate him in compliance with the July 2004 Arbitration Award. The Union requested that plaintiff be reinstated with full back pay and benefits.

67. In a scathing and well-publicized decision, the Office of Collective Bargaining held that ACS brought charges that were based upon "questionable evidence" and that were "redolent of bad faith." It further held that ACS misrepresented facts, acted in bad faith and behaved "disingenuously" by agreeing to reinstate plaintiff to the payroll, in accordance with the June 2004 Stipulation, and then reneging on their promise to do so. See, BCB Docket # BCB-2449-05, Decision # B-35-2006.

68. It was further held that ACS' punishment of plaintiff, including his immediate suspension and the two attempts at terminating plaintiff after two charges of minor misconduct, were "overly punitive" and clearly designed to "rid itself of [the plaintiff]." Id. at 18.

K. Plaintiffs' Return to ACS

69. After a six-year epic battle, which caused great harm to plaintiff's name and character, and prevented him from finding a different job, ACS finally returned plaintiff to work on September 19, 2005.

70. During that difficult six-year period, plaintiff suffered from a stress-related heart condition which required a hospitalization in 2004. While plaintiff was still technically on the ACS payroll and entitled to medical benefits, defendant City canceled his medical benefits and forced the plaintiff to bear the costs of his lengthy hospitalization.

71. Since returning to work, plaintiff has been assigned to menial jobs, such as stuffing envelopes and doing routine paperwork. During the six years of retaliation, his good reputation was smeared and his character assassinated by the ACS administration. Despite the skills and qualifications that plaintiff obtained since 1989, plaintiff is no longer considered to be a valued employee by his supervisors and peers, and it is highly probable that he will never be promoted to a position of greater responsibility at ACS, or elsewhere.

## FIRST CAUSE OF ACTION
### (Violations of First Amendment Rights)

72. Plaintiff repeats, reiterates and realleges paragraphs 1 through 71.

73. On multiple occasions, plaintiff Ralph Vanacore vigorously spoke out about the harm that the Title Series program would cause to children and families whose care would be entrusted to incompetent, unqualified and randomly-selected ACS employees.

74. His words of warning, complaints and criticism were communicated to the administration of ACS, including his supervisors and other officials who were in a position to recommend that the proposed Title Series not come into being.

75. Plaintiff took it upon himself to repeatedly criticize the Title Series program which was a matter of public concern to children, families and foster homes throughout the City of New York.

76. From April 1999 to the present, defendants have engaged in a continuous and relentless campaign to retaliate against plaintiff for his outspoken comments about a flawed public service program that touches the lives of children and families throughout the City of New York.

77. The retaliation came in the form of severe disciplinary measures, repudiations of court orders and agreed-to stipulation, as well as false claims that were manufactured to rid the agency of an employee who had the courage to speak his mind about a public services program that had the potential to ruin the lives of children that ACS intended to help.

78. The retaliation continues today as New York City taxpayers bear the costs of paying for Mr. Vanacore to stuff envelopes and perform menial tasks, all of which are well below his level of experience and competence as a veteran employee of ACS.

79. As a direct and proximate result of the unlawful acts described above, plaintiff is entitled to monetary damages for the deprivation of his constitutional rights.

80. As a direct and proximate result of the unlawful acts described above, plaintiff has sustained economic damage in past and future lost earnings, past and future lost retirement income, incurred attorney's fees and suffered damage to his character, reputation and career, whether it be as a Caseworker, or in some other profession which he has been shut out from.

81. As a direct and proximate result of the unlawful acts described above, plaintiff suffered and still suffers from physical pain and suffering, mental anguish, emotional and psychological injury in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

82. The defendants acted willfully, maliciously, with reckless disregard, and in a manner which exceeds the bounds of civilized society. Accordingly, plaintiff is entitled to an award of punitive damages.

WHEREFORE, plaintiff Ralph Vanacore prays this Court:

A) Enter judgment for plaintiff as and for general damages in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

B) Enter judgment for plaintiff as and for special damages in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

C) Enter judgment for plaintiff as and for punitive damages in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

D) Enter judgment for attorneys fees and costs of this action.

E) Plaintiff demands a trial by jury of all issues herein.

F) Grant such other relief that law and justice requires.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Violations of First Amendment Rights)

83. Plaintiff repeats, reiterates and realleges paragraphs 1 through 82.

84. The retaliation against the plaintiff was carried out pursuant to defendants' custom, policy, pattern or practice of discriminatory retaliation against outspoken employees.

85. Defendants expressed the custom, policy, pattern or practice of discriminatory retaliation by repeatedly punishing ACS employees with demotions, suspension and/or terminations for simply speaking out against ACS policies that harmed the public at large.

86. As a direct and proximate result of plaintiff exercising his First Amendment rights, the defendants, pursuant to their custom, policy, pattern or practice, subjected plaintiff to penalties that were not imposed upon silent employees.

87. As a direct and proximate result of the unlawful acts described herein, plaintiff is entitled to monetary damages for the deprivation of his constitutional rights.

88. As a direct and proximate result of the unlawful acts described above, plaintiff has sustained economic damage in an amount to be determined at trial, including past lost income and income lost during the remainder of his career at ACS, or elsewhere.

89. As a direct and proximately result of the unlawful acts described above, plaintiff suffered and still suffers physical pain and suffering, mental anguish, emotional and psychological injury, all to plaintiff's damage, in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

90. The defendants acted willfully, maliciously, with reckless disregard, and in a manner which exceeds the bounds of civilized society. Accordingly, plaintiff is entitled to an award of punitive damages.

WHEREFORE, plaintiff Ralph Vanacore prays this Court:

A) Enter judgment for plaintiff as and for general damages in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

B) Enter judgment for plaintiff as and for special damages in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

C) Enter judgment for plaintiff as and for punitive damages in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

D) Enter judgment for attorneys' fees and costs of this action.

E) Plaintiff demands a trial by jury of all issues herein.

F) Grant such other relief that law and justice requires.

## AS AND FOR A THIRD CAUSE OF ACTION
(Substantive Due Process)

91. Plaintiff repeats, reiterates and realleges paragraphs 1 through 90.

92. The continuous and targeted actions of discriminatory retaliation and treatment by the defendants were an unconstitutional denial of plaintiff's right to due process of the law as guaranteed by the United States Constitution.

93. That the actions of the defendants were oppressive, shocking to the conscience and an affront to the powers instilled in quasi-judicial and judicial officials of the State of New York.

94. Through trickery, manipulation and misrepresentation, the defendants' reneged on their agreements and avoided complying with orders of an duly-appointed arbitrator and a Justice of the Supreme Court, New York County, which effectively thwarted any chance of resolving this long-standing dispute that drained taxpayer money and led to the destruction of plaintiff's professional and personal reputation.

95. Accordingly, defendants violated plaintiff's right to substantive due process.

WHEREFORE, plaintiff Ralph Vanacore prays this Court:

A) Enter judgment for plaintiff as and for general damages in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

B) Enter judgment for plaintiff as and for special damages in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

C) Enter judgment for plaintiff as and for punitive damages in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

D) Enter judgment for attorneys' fees and costs of this action.

E) Plaintiff demands a trial by jury of all issues herein.

F) Grant such other relief that law and justice requires.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Procedural Due Process)

96. Plaintiff repeats, reiterates and realleges paragraphs 1 through 96.

97. Plaintiff had a property interest in his position under the due process clause of the Fourteenth Amendment to the United States Constitution.

98. The defendants, under color of state law, manufactured reasons for disciplining plaintiff, as noted in the Office for Collective Bargaining's decision, *supra*, in order to rid themselves of the plaintiff, who was an outspoken critic of ACS' Title Series Program.

99. The defendants suspended and terminated Plaintiff from his civil service position without any notice of the basis of his termination, without any meaningful opportunity to respond and without any type of fair hearing.

100. Each time that an ACS Hearing Officer held one of their "kangaroo court" hearings, the outcome was a foregone conclusion – plaintiff would be suspended or terminated.

101. Without any proof, through testimony or documentary evidence, the ACS Hearing Officers' determination of a penalty was a mere rubber stamp to ACS' earlier decision to dole out harsh discipline for alleged acts that were minor, or that simply did not happen.

102. The clear effect of defendants' mockery of ACS' quasi-judicial process resulted in violations of plaintiff's right to procedural due process.

WHEREFORE, plaintiff Ralph Vanacore prays this Court:

A) Enter judgment for plaintiff as and for general damages in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

B) Enter judgment for plaintiff as and for special damages in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

C) Enter judgment for plaintiff as and for punitive damages in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

D) Enter judgment for attorneys' fees and costs of this action.

E) Plaintiff demands a trial by jury of all issues herein.

F) Grant such other relief that law and justice requires.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Conspiracy)

103. Plaintiff repeats, reiterates and realleges paragraphs 1 through 100.

104. The acts, abuses and unlawful conduct by defendants violated plaintiff's First and Fourteenth Amendment rights to fundamental, substantive and procedural due process, as well as his right to free speech, and sought to circumvent federal anti-discrimination laws by offering pretextual reasons for their discipline of the plaintiff.

105. Each and every defendant knew or should have known that their actions were in violation of the plaintiff's right to free speech and to equal protection of the law and that plaintiff should not be subject to retaliation and intimidation.

106. Each and every defendant, acting individually and/or collectively, and under color of law, openly and tacitly agreed to deprive the plaintiff of the rights afforded to him by the United States Constitution, all in retaliation for his voicing speech of public concern.

107. Defendants acquiesced and contributed to the continuation of a conspiracy to violate plaintiff's rights in failing to take action so as to prevent and expose the discriminatory and violative actions being taken against Plaintiff.

108. None of the defendants took action to prevent the wrongful actions that were taken against plaintiff.

109. As a direct result of said acts, plaintiff has suffered and continues to suffer loss of income, loss of other employment benefits, loss of career opportunities, and has suffered and continues to suffer repeated, severe and permanent psychological, emotional and physical trauma and damage, including distress, humiliation, embarrassment, great financial expense and damage to his personal and professional reputation.

110. As a result of defendants' unlawful acts, plaintiff is entitled to general and special damages, as well as costs, attorney's fees and punitive damages, to be determined at the time of trial.

A) Enter judgment for plaintiff as and for general damages in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

B) Enter judgment for plaintiff as and for special damages in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

C) Enter judgment for plaintiff as and for punitive damages in an amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

D) Enter judgment for attorneys' fees and costs of this action.

E) Plaintiff demands a trial by jury of all issues herein.

F) Grant such other relief that law and justice requires.

## JURY DEMAND

111. Plaintiff demands a trial by jury of all issues in this action that are so triable.

Dated: New York, New York
May 4, 2007

Respectfully submitted,

**LAW OFFICE OF SCOTT B. SCHWARTZ, PLLC.**

By: _____
Scott B. Schwartz (SS-7082)
40 Exchange Place, Suite 2010
New York, New York 10005
(212) 321-7091
*Attorney for Plaintiff Ralph Vanacore*