UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

RALPH VANACORE

           Plaintiff,

-against-

JOHN MATTINGLY, Individually, and as
Commissioner of the New York City Administration for
Children's Services, WILLIAM BELL, Individually, and
as Commissioner of the New York City Administration
for Children's Services, NICHOLAS SCOPETTA,
Individually, and as Commissioner of the New York City
Administration for Children's Services and THE CITY
OF NEW YORK,

           Defendants.

------------------------------------------------------------------ x

**PRELIMINARY PRE-TRIAL STATEMENT**

07-CV-3579 (LTS)

  Pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure and the Individual Practices of Hon. Laura Taylor Swain, United States District Judge, the parties hereby submit the following as their Preliminary Pre-Trial Statement:

(a) <u>Nature of Action</u>:

  Plaintiff, a Case Worker employed by the City of New York, and assigned to work for the New York City Administration for Children's Services, brings this Civil Rights Action alleging that the defendants, the City of New York and various ACS Commissioners, engaged in a continuous and targeted effort to discriminate and retaliate against plaintiff in violation of the First Amendment and the Fourteenth Amendment.

(b) <u>Jurisdictional Basis</u>:

  The parties agree that the Court's jurisdiction is based on federal questions raised in the Complaint. Plaintiff asserts violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985, and the First and Fourteenth Amendments of the United States Constitution. Therefore, jurisdiction is conferred upon this Court by 28 U.S.C. § 1343, which provides for original jurisdiction over all actions brought pursuant to 42 U.S.C. § 1983, and by 28 U.S.C. § 1331, which provides jurisdiction over all cases brought pursuant to the Constitution and laws of the United States.

(c) Material Uncontested or Admitted Facts

Plaintiff's Version:

- Plaintiff has been employed as a Caseworker by the City of New York since January 2, 1989.

- Plaintiff began working as a Caseworker for Administration for Children's Services (ACS), an agency of the City of New York, on June 23, 1996.

- New York City Charter § 617 provides for the creation of ACS which, inter alia, is charged with investigating reports of child abuse and maltreatment.

- The Commissioner of ACS is designated as "head" of the agency, and is responsible to forward ACS' aims and goals as defined by New York City Charter § 617.

- From 1996 until December 2001, Nicholas Scoppetta served as ACS Commissioner.

- From December 2001 until July 2004, William Bell served as ACS Commissioner.

- From July 2004 until the present, John Mattingly has served as ACS Commissioner.

- In 1998, ACS, which was formerly known as the Bureau of Child Welfare, and the New York City Division of Citywide Administration Services, created new titles for their Caseworkers, including the positions of Child Welfare Specialist (CWS), Child Protective Specialist (CPS), CWS Supervisor and CPS Specialist.

- Plaintiff was notified that he was denied placement into these categories.

- In April 1999, Plaintiff was notified that he was suspended for seven days based on allegations that he harassed and intimidated an ACS supervisor.

- Plaintiff had not been subject to any formal disciplinary measure prior to this time.

- From April 1999 until the present, a Collective Bargaining Agreement (CBA) has existed between the City of New York and Social Service Employees Union, Local 371, providing for a grievance process by which ACS employees may protest disciplinary measures taken against them.

- Plaintiff, a Local 371 member, appeared before an ACS Hearing Officer to protest his seven-day suspension.

- In a Decision dated August 25, 1999, the seven-day suspension was upheld.

- Plaintiff appealed from the Step I Decision, resulting in a Step II hearing on October 20, 1999.

- In a November 8, 1999 Decision, the ACS Hearing Officer reduced the suspension from seven days to four days.

- Plaintiff appealed the Step II Decision, resulting in a Step III hearing that upheld the four-day suspension in a Decision dated November 30, 2000.

- In February 2001, ACS served Plaintiff with a new set of charges, claiming that he plaintiff failed to perform his required duties.

- At a Step I hearing, the ACS Hearing Officer recommended that Plaintiff be terminated by the City of New York.

- Plaintiff appealed from the Step I Decision, which resulted in a Step II hearing that was held in Plaintiff's absence.

- After the Step II hearing was held, the ACS Hearing Officer upheld the recommendation that Plaintiff should be terminated.

- By letter dated October 26, 2001, then-ACS Commsisioner Nicholas Scoppetta adopted the recommendation that Plaintiff be terminated from the agency.

- Local 371 challenged ACS' disciplinary actions by filing a Request for Arbitration concerning the February 2001 charges that led to the termination.

- During the Arbitration, the parties entered into a Stipulation reflecting that Plaintiff would be reinstated to the ACS payroll pending the outcome of the Arbitration.

- In a Decision dated July 20, 2004, the Arbitrator modified the penalty of termination to a three-month suspension without pay, thereby reinstating Plaintiff to his position with ACS.

- ACS brought new charges against Plaintiff in August 2004, resulting in a thirty-day suspension, effective September 7, 2004.

- On September 20, 2004, an ACS Hearing Officer confirmed the August 2004 Charges and held that plaintiff should be terminated.

- On September 28, 2004, a Step II conference was held in which the ACS Hearing Officer confirmed that the penalty of termination was warranted.

- In a letter dated October 6, 2004, Defendant Mattingly, the ACS Commissioner, sent Plaintiff a letter accepting the Step II determination and terminated plaintiff, effective immediately.

- Defendant Mattingly was the second ACS Commissioner to terminate Plaintiff.

- A separate set of charges dated September 15, 2004, were served on Plaintiff.

- On February 24, 2005, an ACS Hearing Officer recommended that plaintiff be terminated from ACS in connection with the September 2004 Charges.

- Plaintiff appealed this Step I determination.

- At a Step II hearing, the recommendation of termination was upheld.

- In a letter dated April 27, 2005, defendant Mattingly, Commissioner of ACS, sent plaintiff a letter accepting the Step II determination that plaintiff should be terminated, effective immediately.

- Local 371 then brought an Article 75 proceeding in the Supreme Court, New York County, under Index No.: 113534/04 to confirm the July 2004 arbitration award, which rejected termination as a disciplinary measure.

- An Order was issued by the Supreme Court, New York County on February 8, 2005, confirming the award.

- Local 371 filed a Request for Arbitration challenging the August 2004 Charges that resulted in Plaintiff's termination, as memorialized by Defendant Mattingly's letter dated October 6, 2004.

- Arbitrator Jane Morganstern, of the Office of Collective Bargaining (OCB), issued an Award dated August 24, 2005.

- The Award modified the four-day suspension to a reprimand, modified the first termination to a five-day disciplinary suspension, and modified the second termination to a five-day disciplinary suspension.

- On January 6, 2005, the Union filed an improper practice petition with the OCB.

- An Award was issued by the OCB (Decision No.: B-35-2006), reinstating Plaintiff back to his position with ACS.

- Plaintiff was reinstated on September 19, 2005.

- Plaintiff continues to work as a Caseworker for ACS today.

Defendants' Version

- Plaintiff began his employment as a Caseworker with the City of New York on or about January 3, 1989.

- Plaintiff began working as a Caseworker for the Administration for Children's Services (ACS), an agency of the City of New York, on or about June 23, 1996.

- From in or about 1996 until in or about December 2001, Nicholas Scoppetta served as ACS Commissioner.

- From in or about December 2001 until in or about July 2004, William Bell served as ACS Commissioner.

- From in or about July 2004 until the present, John Mattingly has served as ACS Commissioner.

(d) <u>Uncontested Legal Issues</u>:

At all relevant times, plaintiff was a "public employee" as that term applies to claims made under the First and Fourteenth Amendments of the United States Constitution.

(e) <u>Legal Issues To Be Decided By The Court</u>:

Defendants dispute all five causes of action brought by plaintiff and therefore all legal issues are to be decided by the Court.

(f) <u>Concise Statement of Disputed Facts</u>:

Plaintiff's statement of material disputed facts is as follows:

- The placement of ACS Caseworkers into new titles in 1998 was random, arbitrary and non-competitive, without any objective method of evaluating candidates' skills.

- Plaintiff was an outspoken critic of the Title Series, which allowed incompetent ACS Caseworkers, without suitable skills and experience, to care for abused children.

- In 1998, plaintiff was a 9-year veteran Caseworker who was competent and well-qualified to serve in any of the four newly-created positions.

- Unlike other ACS Caseworkers, plaintiff was never given a performance review.

- As a result of speaking out about the dangers of enacting a non-competitive job placement program, plaintiff was not chosen for any of the four newly-created positions.

- On the same date that plaintiff was formally rejected from the Title Series, he was served with a notice of suspension.

- The first set of charges were rejected at the Step II conference because there was no proof to support them, and ACS failed to follow a policy of progressive discipline.

- From April 1999 until December 1999, ACS officials requested that plaintiff stay away from his assigned office, and, at the same time, collect his full salary, except for a reduction of four days pay.

- A Step III conference did not take place for more than 10 months.

- The February 2001 Charges include alleged misconduct that took place in December 1999, a time period in which plaintiff had not reported to work, at the request of ACS officials.

- On August 14, 2001, an ACS Hearing Officer conducting a Step II conference refused to accommodate plaintiff's request for an adjournment, even though the request was legitimately based on an illness.

- The second hearing day of the first Arbitration was adjourned on condition that plaintiff be reinstated to ACS' payroll pending the outcome of the arbitration.

- The City of New York reneged on its Stipulation that allowed plaintiff to be reinstated to its payroll.

- The Arbitrator, in his July 20, 2004 Decision, held that ACS failed to prove most of its allegations against plaintiff, failed to enact a progressive series of disciplinary measures, failed to advise plaintiff of ACS' performance and behavioral standards, and found that there was no evidence that plaintiff ever threatened or intimidated his supervisor.

- The lateness of the August 2004 charges, which were brought more than three years after the alleged acts of conduct, was blamed on the 9/11/01 WTC attacks.

- None of the acts that formed the basis of the August 2004 charge were raised during the Arbitration that resulted in plaintiff's reinstatement to ACS.

- The letter dated April 27, 2005 from defendant Mattingly, which terminated plaintiff's employment, was in derogation of an Arbitrator's decision and an Order of the Supreme Court, New York County.

- At the second Arbitration, the September 2004 Charges were dismissed on grounds that they were not substantiated at all.

- The Office of Collective Bargaining (OCB), in deciding the Unfair Labor Practice action, held that ACS brought charges that were based upon "questionable evidence" and "redolent of bad faith."

- The OCB further held that ACS misrepresented facts, acted in bad faith and behaved "disingenuously" by agreeing to reinstate plaintiff to the payroll, in accordance with the June 2004 Stipulation, and then reneging on their promise to do so.

- The OCB further held that ACS' punishment of plaintiff, including his immediate suspension and the two attempts at terminating plaintiff after two charges of

minor misconduct, were "overly punitive" and clearly designed to "rid itself of [the plaintiff]."

- When plaintiff suffered from a stress-related heart condition, which required a hospitalization in 2004, the City of New York canceled his medical benefits and forced the plaintiff to bear the costs of his lengthy hospitalization.

- Since his reinstatement, plaintiff has been assigned to menial jobs, such as stuffing envelopes and doing routine paperwork, such tasks being well below his skill level and qualifications.

Defendants' statement of disputed facts is as follows:

- Defendants dispute plaintiff's statement of disputed facts.

- Defendants respectfully refer the Court to their Answer to the Complaint for additional statements of disputed facts.

- In addition to the Answer, defendants state the following:
  o Plaintiff did not engage in protected speech under the First Amendment to the United States Constitution, because plaintiff did not complain to anyone at ACS about matters of public concern.
  o Defendants deny that plaintiff's First Amendment rights were violated and that he was retaliated against.
  o Defendants deny that plaintiff's substantive due process rights were violated.
  o Defendants deny that they have a policy, custom or practice of discriminatory retaliation against plaintiff.
  o Defendants deny that they violated plaintiff's procedural due process rights.
  o Defendants had a good faith basis in fact for instituting discipline against plaintiff.
  o Plaintiff had meaningful opportunities to present his case at all levels of the disciplinary process.
  o Defendants did not, and legally could not, conspire to retaliate against plaintiff for voicing speech of public concern.

(g) Concise Statement Of Each Cause Of Action Asserted:

First Cause of Action:   Plaintiff alleges that his First Amendment rights were violated when he was retaliated again based on his repeated criticism of the Title Series program, which was a matter of public concern to children, families and foster homes throughout New York City.

Second Cause of Action:   Plaintiff alleges that the violations of his First Amendment rights were part of a custom, policy, pattern or practice of discriminatory retaliation undertaken by defendants.

<ins>Third Cause of Action</ins>: Plaintiff alleges that defendants violated principles of substantive due process by reneging on Agreements, and by failing to comply with orders of Arbitrator and a state judge.

<ins>Fourth Cause of Action</ins>: Plaintiff alleges that defendants violated principles of procedural due process by suspending and terminating him, without any basis in fact, and without any meaningful opportunity to respond based on the ACS Hearing Officers' willingness to rubber-stamp the penalties that were doled out.

<ins>Fifth Cause of Action</ins>: Plaintiff alleges that defendants conspired, under color of law, to retaliate against him for voicing speech of public concern.

(h) <ins>Concise Statement Of All Defenses</ins>:

- First Defense: Plaintiff fails to state a claim upon which relief can be granted because he did not engage in protected speech, he cannot set forth a claim of retaliation and he cannot sustain a claim that the defendants conspired to retaliate against him for engaging in protected speech.
- Second Defense: Plaintiff's conspiracy claims are barred by the doctrine of intra-corporate or intra-agency conspiracy.
- Third Defense: Defendants have not violated any rights, privileges or immunities under the Constitution or laws of the United States.
- Fourth Defense: Any injuries alleged in the complaint were caused in whole or in part by plaintiff's culpable or negligent conduct in that plaintiff's performance issues were the cause of the charges and specifications that were proffered against him.
- Fifth Defense: This action may be barred, in whole or in part, by the applicable three year statute of limitations for bringing claims under the Constitution of the United States pursuant to Section 1983. For example, defendant Scoppetta was no longer the Commissioner of ACS in 2001, more than three years prior to the commencement of the instant case.
- Sixth Defense: This action may be barred in whole or in part, by the doctrines of res judicata and/or collateral estoppel based on the arbitration decisions and the Article 75 proceeding plaintiff brought in New York State Supreme Court.
- Seventh Defense: The individual defendants are entitled to qualified immunity with respect to plaintiff's claims under 42 U.S.C. § 1983 because (a) they have not violated any rights of which a reasonable person would be aware and (b) it was objectively reasonable for the defendants to have believe that their actions were lawful and proper. See e.g. <ins>Lennon v. Miller</ins>, 66 F.3d 416, 423 (2d Cir. 1995).
- Eighth Defense: Plaintiff's claim for front and/or back pay may be barred by his failure to mitigate damages.
- Ninth Defense: Defendants have not adopted any policy, practice or custom violative of plaintiff's rights.
- Tenth Defense: At all times relevant to the acts alleged in the complaint, defendants acted reasonably, properly, lawfully and in good faith, and without malice.

(i) <u>Measure And Burden Of Proof</u>:

The burden of proof is on plaintiff.

(j) <u>Amendment To The Pleadings</u>:

The parties have 30 days from the date of the initial conference in this matter to amend their pleadings.

(k) <u>Consent To Trial By A Magistrate Judge</u>:

The parties do not agree, at this time, to trial by a United States Magistrate Judge.

(l) <u>Initial Disclosures</u>:

Disclosure required under Fed. R. Civ. P. 26 (a) (1) shall be made by October 15, 2007.

(m) <u>Discovery Plan</u>:

The parties agree to conduct discovery as follows:

1. "Paper" Discovery
    a. Service of First Set of Interrogatories and Request for Documents shall be made no later than October 26, 2007.
    b. Responses shall be due no later than November 30, 2007.
    c. All paper discovery shall be completed by March 13, 2008.
2. Depositions
    a. Depositions of fact witnesses shall be completed by March 13, 2008.
    b. Plaintiff anticipates taking 3 depositions and any of defendants' experts.
    c. Defendants anticipate taking the deposition of plaintiff and any of plaintiff's experts.

(n) <u>Expert Discovery</u>:

Expert Discovery shall be completed by March 13, 2008.

(o) <u>Changes Of Limitations On Discovery</u>:

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, the parties agree to produce all electronically stored information in paper format, unless otherwise agreed to by the parties or, failing agreement,[1] on application to the Court for good cause shown.

---

[1] The parties specifically agree that they will attempt to resolve any disputes concerning electronically stored information prior to making any application to the Court as required by the Federal Rules of Civil Procedure, the Local Rules of this Court and the Individual Practices of the assigned District Judge and/or Magistrate Judge.

(p) <u>Settlement and Mediation</u>:

The parties have not agreed on a settlement, however, defendants have requested that plaintiff provide a settlement demand. The parties are open to further settlement discussions, but do not believe that mediation is appropriate at this time.

(q) <u>Trial</u>:

Plaintiff requests a trial by jury and projects he would need between 3-5 business days to present his case. Defendants anticipate that they would need between 3-5 business days to present their defense.

(r) <u>Other Orders That Should Be Entered</u>:

Plaintiff requests an order stating that neither party will destroy any documents that relate to the claims raised in this action. Defendants do not consent to this request, as the parties are legally obligated not to destroy any relevant documents.

Dated: September 18, 2007
New York, New York

| | |
|---|---|
| Law Office of Scott B. Schwartz<br>Attorneys for Plaintiff<br>40 Exchange Place, Suite 2010<br>New York, NY 10005<br>(212) 321-7091 | MICHAEL A. CARDOZO<br>Corporation Counsel of the<br>City of New York<br>Attorney for Defendants<br>100 Church Street, Room 2-115<br>New York, New York 10007<br>(212) 788-0903 |
| By: _____/s/_____<br>Scott B. Schwartz | By: _____/s/_____<br>Lisa M. Griffith<br>Assistant Corporation Counsel |

SO ORDERED:

_____
Hon. Laura Taylor Swain
United States District Judge